```
                  UNITED STATES DISTRICT COURT
                    DISTRICT OF CONNECTICUT
```

Estate of Patricia Metzermacher,     :
by Michael Metzermacher,             :
Administrator et al.,                :
     Plaintiffs,                     :
                                     :   Case No. 3:05cv1964 (JBA)
v.                                   :
                                     :
National Railroad Passenger          :
Corp. a/k/a Amtrak et al.,           :
     Defendants.                     :

**RULING ON DEFENDANTS' MOTIONS TO DISMISS [DOCS. ## 39, 41, 45]**

Plaintiffs David Metzermacher and Dawn Rainville, individually and as executors of the estates of their children, Zachary and Courtney Metzermacher, and David's mother, Patricia Metzermacher, brought this action against defendants National Railroad Passenger Corporation a/k/a Amtrak ("Amtrak"), the Town of Waterford ("Town"), and current and former Town officials Thomas Wagner, Thomas Sheridan, Paul Eccard, and Murray Pendleton (collectively, with the Town, the "Town defendants"), alleging negligence, public nuisance, loss of consortium, bystander emotional distress, and indemnity (against the Town), arising out of the injury and eventual death of Patricia, Zachary, and Courtney Metzermacher following a September 28, 2005 accident at an Amtrak train crossing of Miner Lane in Waterford Connecticut. See Sec. Am. Compl. [Doc. # 51]. The Town defendants move pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the claims against them (Counts 3-4, 6-8) as barred by the exclusivity

1

provision in the Connecticut highway defect statute, Conn. Gen. Stat. § 13a-149.  See Town Mot. [Doc. # 39/45].  Alternatively, the Town defendants argue that plaintiffs' bystander emotional distress claims (Counts 6 and 7) should be dismissed as they fail as a matter of law, which argument defendant Amtrak joins (see Amtrak Mot. [Doc. # 41]), and that the claims against defendant Thomas Sheridan are barred by the applicable statute of limitations.  Plaintiffs contend that their claims are not within the scope of the highway defect statute and as such are not barred, that their claims for bystander emotional distress are legally adequate, and that the statute of limitations against former Town selectman Thomas Sheridan has not run.  For the reasons that follow, the motion of the Town defendants will be granted, and Amtrak's motion will be granted in part and denied in part.

## I.   Factual Background

Plaintiffs' Second Amended Complaint details the tragic accident on September 28, 2005 that took the lives of their children, Zachary and Courtney Metzermacher, and David's mother, Patricia Metzermacher.[1]  The allegations of the pleading, which the Court accepts as true for purposes of this motion, reveal the

---

[1] Although plaintiffs' Second Amended Complaint was filed after defendants' Motion to Dismiss, it is the operative pleading as the filing was made within the time frame set by the Court, see [Doc. # 50], and was acknowledged by defendants in their reply memorandum, see [Doc. # 62] at 2.

following facts.

At 7:45 a.m. on September 28, 2005, Patricia Metzermacher was driving her Ford Taurus north on Miner Lane, a public highway in the Town of Waterford, Connecticut, with her grandchildren (plaintiffs' children) Zachary and Courtney Metzermacher in the car with her.  Sec. Am. Compl. ¶ 15.  As Patricia Metzermacher crossed a "quad-gated railroad gate crossing owned by the defendant Amtrak, both the entrance and exit gates lowered, trapping the plaintiffs' decedents . . . between the entrance gate and exit gate, and the plaintiffs' decedents were suddenly and without warning violently struck by a westbound Acela high speed train, traveling at over 70 miles per hour, owned by the defendant Amtrak, and operated by an employee of the defendant Amtrak. . ." Id. ¶ 16.  "This violent and high speed force of the impact resulted in the Metzermacher vehicle and its occupants being pushed over 1,000 feet west down the tracks by the train before coming to rest, resulting in the violent, painful and untimely death of all three occupants."  Id. ¶ 17.

Once plaintiffs were "immediately informed of the collision," David Metzermacher drove to Miner Lane from his place of employment, but "[b]efore arriving at the accident scene, he was told that his mother had died, that his daughter was in critical condition; and that his son, Zachary, was being taken to Lawrence & Memorial Hospital in New London, Connecticut.  Shortly

3

after his arrival at Lawrence & Memorial Hospital, David Metzermacher's brother arrived and told him that his son, Zachary, had died at the accident scene and that his daughter, Courtney, was being airlifted to Hartford Hospital. [He] immediately drove to Hartford Hospital to be with his critically injured daughter, Courtney." Id. Count 6 ¶ 48.  Plaintiff Metzermacher "continued the vigil at his daughter's bedside at Hartford Hospital, leaving only to attend the wake and funeral of his mother [and] son," until Courtney died nine days later. Id. Count 6 ¶¶ 49, 51.  After being informed of the collision, plaintiff Rainville arrived at the scene of the accident "immediately after the accident occurred and observed the scene of the violent collision in which Patricia Metzermacher, and her son, Zachary Metzermacher, had been killed, and her daughter, Courtney Metzermacher, had been severely injured.  She arrived on the scene before there had been any substantial changes in the condition of the scene of the accident or any substantial changes in her children's injuries." Id. Count 7 ¶ 48.  Accordingly, Rainville "witnessed the mangled vehicle in which Patricia Metzermacher and her son, Zachary, had died and observed their dead bodies at the scene [and] witnessed her daughter, who was severely injured and in excruciating pain, being extricated from the wreckage and transported to the hospital where she died a painful death nine days later." Id.  In Counts 6 and 7, the SAC

alleges that as a result of their experiences, Metzermacher and Rainville "suffered nervous shock, extreme emotional turmoil and mental distress and anguish" and "will likely suffer extreme emotional distress and mental pain for the rest of [their] [lives]." Id. Count 6 ¶¶ 52-53, Count 7 ¶ 49, 51.  Plaintiff Rainville was also "hospitalized as an impatient at the Pond House psychiatric hospital in New London, Connecticut, for long term care due to her suicidal tendencies." Id. Count 7 ¶ 50. These allegations form the basis for plaintiffs' bystander emotional distress claims.

    The SAC alleges the actions or omissions made by defendant Amtrak resulting in the claimed negligence and public nuisance, see id. Counts 1-2, and also details the claimed failures of the Town and individual Town defendants, allegedly resulting in negligence and public nuisance, id. Counts 3-4.  Plaintiffs also bring a loss of filial consortium claim against Amtrak, id. Count 5, and a claim for indemnity by the Town pursuant to Conn. Gen. Stat. § 7-101a and/or § 7-465 for the alleged wrongdoing of the individual Town defendants, id. Count 8.

    As noted above, the Town defendants move to dismiss all claims brought against them (Counts 3-4 and 6-8) as barred by the highway defect statute, Conn. Gen. Stat. § 13a-149, and also, alternatively, to dismiss the bystander emotional distress claims (Counts 6-7) for failure to state a claim upon which relief can

be granted, which argument Amtrak joins.

**II.  Standard**

In ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court accepts all well-pleaded allegations as true and draws all reasonable inferences in favor of the pleader. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Allen v. Westpoint-Pepperell, Inc., 945 F.2d 40, 44 (2d Cir. 1991).  A "complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46 (1957) (footnote omitted); Jahgory v. N.Y. State Dep't of Educ., 131 F.3d 326, 329 (2d Cir. 1997).  "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.  Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test."  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

**III. Discussion**

   A.   Connecticut Highway Defect Statute

The Town defendants claim that plaintiffs' allegations "if true, clearly amount to a highway defect under Conn. Gen. Stat. § 13a-149, thus the plaintiffs' exclusive remedy falls under same."  Town Mem. [Doc. # 45-2] at 9.

6

Conn. Gen. Stat. § 13a-149 states:

> Any person injured in person or property by means of a defective road or bridge may recover damages from the party bound to keep it in repair.  No action for any such injury sustained on or after October 1, 1982, shall be brought except within two years from the date of such injury.  No action for any such injury shall be maintained against any town, city, corporation or borough, unless written notice of such injury and a general description of the same, and of the cause thereof and of the time and place of its occurrence, shall, within ninety days thereafter be given to a selectman or the clerk of such town, or to the clerk of such city or borough, or to the secretary or treasurer of such corporation.  If the injury has been caused by a structure legally placed on such road by a railroad company, it, and not the party bound to keep the road in repair, shall be liable therefor.  No notice given under the provisions of this section shall be held invalid or insufficient by reason of an inaccuracy in describing the injury or in stating the time, place or cause of its occurrence, if it appears that there was no intention to mislead or that such town, city, corporation or borough was not in fact misled thereby.

Conn. Gen. Stat. § 52-557n in turn concerns the "[l]iability of political subdivision and its employees, officers and agents [and] of members of local boards and commissions," and provides in relevant part (emphasis added):

> (a)(1) Except as otherwise provided by law, a political subdivision of the state shall be liable for damages to person or property caused by: (A) The negligent acts or omissions of such political subdivision or any employee, officer or agent thereof acting within the scope of his employment or official duties; (B) negligence in the performance of functions from which the political subdivision derives a special corporate profit or pecuniary benefit; and (C) acts of the political subdivision which constitute the creation or participation in the creation of a nuisance; <u>provided, no cause of action shall be maintained for damages resulting from injury to any person or property by means of a defective road or bridge except pursuant to</u>

> section 13a-149. (2) Except as otherwise provided by law, a political subdivision of the state shall not be liable for damages to person or property caused by: (A) Acts or omissions of any employee, officer or agent which constitute criminal conduct, fraud, actual malice or wilful misconduct; or (B) negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law.

With respect to these provisions, the Connecticut Supreme Court has held: "A town is not liable for highway defects unless made so by statute. . . . Under § 13a-149, 'any person injured in person or property by means of a defective road or bridge may recover damages from the party bound to keep it in repair . . .' We have construed § 52-557n . . . to provide that, in an action against a municipality for damages resulting from a highway defect, the defective highway statute is the plaintiff's exclusive remedy." Ferreira v. Pringle, 255 Conn. 300, 341 (2001) (internal quotations omitted). Thus, the Connecticut Supreme Court has "construed § 52-557n to bar, in addition to nuisance actions, actions in negligence or for breach of ministerial duty brought against the municipality or derivatively by way of the indemnification statute § 7-465." Sanzone v. Bd. of Police Commissioners of the City of Bridgeport, 219 Conn. 179, 202 (1991).

Plaintiffs contend that their claims do not relate to a "highway defect" because "the railroad crossing where the collision occurred was owned, controlled, possessed and

8

maintained by the Co-Defendant [Amtrak]." Pl. Mem. [Doc. # 57-2] at 7. Additionally, plaintiffs argue that "the negligence complained of in the Third Count of the Second Amended Complaint does not relate to any defect in the traveled upon portion of Miner Lane, but relates to the individual Town Defendants' actions in rejecting the proposals of the [Federal Railroad Administration ("FRA")] to construct an overpass or bypass at the Miner Lane crossing in favor of the construction of the quad gate system without authority to do so [and] when the Town Defendants rejected the FRA's proposals, without the authority to do so, they placed eight identifiable families in danger of being imminently harmed and should be held liable for such conduct." Id. at 7-8.

However, plaintiffs' arguments do not succeed in bringing their claims outside the reach of the highway defect statute. As Ferreira stated, "[w]hether a highway is defective may involve questions of fact, but whether the facts alleged would, if true, amount to a highway defect according to the statute is a question of law." Id. at 341-42. "[A] highway defect is any object in, upon, or near the traveled path, which would necessarily obstruct or hinder one in the use of the road for the purpose of traveling thereon, or which, from its nature and position, would be likely to produce that result." Id. at 344. The scope of "highway defect" is thus "not limited solely to defects in the road," and

9

thus can include defects in areas "incidental thereto," including, for example shoulders.  Id.

The language of § 13a-149 alone contradicts plaintiffs' first argument.  The statute provides, inter alia, "[i]f the injury has been caused by a structure legally placed on such road by a railroad company, it and not the party bound to keep the road in repair, shall be liable therefor."  This provision, while possibly releasing the Town of liability under the highway defect statute in circumstances such as these, demonstrates that a structure such as the quad-gate system here, whose apparent malfunction resulted in the claimed injuries, constitutes a "highway defect" within the ambit of the statute.[2]  See also Robishaw v. New England Cent. Railroad, No. X07cv990071617S, 2000 WL 1056620 (Conn. Super. Ct. July 14, 2000) (holding that the facts alleged, including "that the railroad grade crossing, which has tracks upon the road that could hinder one in the use of the road for traveling thereon, was allegedly abnormally dangerous and extra-hazardous for public travel in that the safety cross devices, such as the crossing signals, were malfunctioned, and

---

[2] Hewison v. City of New Haven, 34 Conn. 136 (1867), cited by plaintiffs, does not support their argument because it concerned injuries caused off the roadway.  ("[T]hose objects which have no necessary connection with the road bed or relation to the public travel thereon, and the danger [] which arises from mere casual proximity and not from the use of the road for the purpose of traveling thereon, will not as a general rule render the road defective.").

the railroad grade crossing lacked crossing gates, drop-arms, functional warning and crossing lights, sufficient warning signs, audible warning devices and other safety devices," if true, "amount to a highway defect under General Statutes § 13a-149").[3]

As to plaintiffs' contention that their claims against the Town defendants relate not to an alleged highway defect but to the negligence of the Town defendants in failing to do their job (i.e., by rejecting proposals to construct an overpass or bypass at the railroad crossing), this argument has been rejected by Connecticut courts.  The Connecticut Supreme Court in Ferreira held that "because § 7-465(a) requires a municipality to indemnify its officers for their negligent acts, § 52-557n also bars a joint action seeking damages against a municipality and its officer for damages resulting from a highway defect" and "determine[d] that the claims asserted against the defendants in their individual capacities serve[d] as a veiled attempt to impose liability on the municipality [and] [t]hus, the plaintiff's claim for damages against the defendants involve[s] what can be construed only as a claim under the defective highway statute."  Ferreira, 255 Conn. at 343-44.  Thus, as explained in

---

[3] Accordingly, the cases cited by plaintiffs in support of the proposition that "it has long been held that liability for injuries caused by defective premises turns on who has possession and control of the property where the injury occurred," Pl. Mem. at 8-9, are thus inapposite in the context of this statute, and plaintiffs' attempts to distinguish the cases cited by defendants, see id. at 9-10, ineffective.

Robishaw v. Murphy, No. X07cv000073137S, 2001 WL 1231749 (Conn. Super. Ct. Sept. 21, 2001), Ferreira overruled that part of Sanzone, cited by plaintiffs (see Pl. Mem. at 23), which stated "[t]here is no reason to believe . . . that the legislature intended to eliminate an injured plaintiff's common law right to seek damages from individual municipal employees," and Ferreira "stands for the proposition that where the highway defect statute is triggered by the underlying factual allegations, it is the exclusive remedy against not only the municipality, but also for its employees who are acting in their official capacity." 2001 WL 1231749, at *1 (citing Ferreira). The 2001 Robishaw decision cited Ferreira and accordingly rejected the plaintiffs' arguments, similar to those advanced here, "that the claims against the defendant arise out of his failure to carry out his job rather than a highway defect." Id. The 2001 Robishaw court stated "it is not the failure to do his job that gives rise to a cause of action, but the consequence of an allegedly defective highway" and found "[a]s in Ferreira, it is clear that the allegations against the defendant in this case are being asserted as a basis for imposing liability on the town. Therefore, the plaintiffs' exclusive remedy against either the municipality or its employees is an action pursuant to the highway defect

statute."[4]  Id.

    Thus, plaintiffs' claims against the Town defendants are barred by Conn. Gen. Stat. § 52-557n, which renders the highway defect statute their only recourse against the Town defendants for such claims.  As discussed above, this includes the indemnity claim brought against the Town pursuant to both § 7-465(a) and § 7-101a.  See Ferreira, 255 Conn. at 341 (action for indemnification under § 7-465 barred); Robishaw, 2000 WL 1056620, at *4 ("If a town may not be held liable under § 7-465 for damages caused by highway defects, since this would allow plaintiffs to circumvent the requirements of General Statutes § 13a-149, . . . it is logical that a town should not be held liable under § 7-101a for damages caused by highway defects.").  This also includes plaintiffs' bystander emotional distress claims against the Town defendants, as those claims also arise from a highway defect and the claimed negligence/nuisance by the Town defendants, notwithstanding that the highway defect statute "permits recovery only by the injured 'traveler.'"  Cf. Sanzone, 219 Conn. at 198-99 ("[I]n providing no cause of action shall be maintained in nuisance or negligence that might be brought under the highway defect statute, the legislature eliminated the

---

[4] The cases cited by plaintiffs in support of their argument that the injuries claimed were caused by the negligence of the Town defendants in performing their ministerial duties and concerning municipal liability generally, see Pl. Mem. at 14-15, 17-19, 22-25, are thus inapposite.

victim's spouse's right to recovery for loss of consortium. An action for loss of consortium is derivative of the injured spouse's cause of action, the consortium claim would be barred when the suit brought by the injured spouse is barred.") (internal quotations omitted).[5]

### B. Bystander Emotional Distress Claims

While all claims against the Town defendants, including the bystander emotional distress claims, are thus barred by the highway defect statute and the exclusive remedy provision of Conn. Gen. Stat. § 52-557n(a), the emotional distress claims remain against defendant Amtrak. Amtrak, in joining the Town defendants' motion, argues that Counts 6 and 7 do not state claims upon which relief can be granted because they do not meet the legal requirements of a bystander emotional distress claim in Connecticut.

In Connecticut, "a bystander may recover damages for emotional distress under the rule of reasonable foreseeability if the bystander satisfies the following conditions: (1) he or she is closely related to the injury victim, such as the parent or the sibling of the victim; (2) the emotional injury of the bystander is caused by the contemporaneous sensory perception of

---

[5] In light of the Court's determination, it need not reach the Town defendants' argument that all claims against defendant Thomas Sheridan are barred by the applicable statute of limitations.

14

the event or conduct that causes the injury, or by arriving on the scene soon thereafter and before substantial change has occurred in the victim's condition or location; (3) the injury of the victim must be substantial, relating in his or her death or serious physical injury; and (4) the bystander's emotional injury must be serious, beyond that which would be anticipated in a disinterested witness and which is not the result of an abnormal response." Clohessy v. Bachelor, 237 Conn. 31, 56 (1996).

The allegations of plaintiff Michael Metzermacher's bystander emotional distress claim (Count 6) do not satisfy the second element, as Mr. Metzermacher never arrived at the scene of the accident, instead driving directly to a hospital before he reached the scene, Sec. Am. Compl. Count 6 ¶ 48, and thus defendant Amtrak's motion to dismiss this claim will be granted.

The allegations of Ms. Rainville's claim (Count 7), however, do satisfy the second element, as well as the other elements, of a bystander emotional distress claim.  Ms. Rainville was closely related to the victims (her two children and her mother-in-law), "[s]he arrived on the scene before there had been any substantial changes in the condition of the scene of the accident or any substantial in her children's injuries [and] witnessed the mangled vehicle in which Patricia Metzermacher and son, Zachary, had died and observed their dead bodies at the scene [and] witnessed her daughter, who was severely injured and in

15

excruciating pain, being extricated from the wreckage and transported to the hospital," id. Count 7 ¶ 48, the victims of the accident all suffered serious injury, i.e. death, and Rainville suffered serious emotional injury, including long-term hospitalization for suicidal tendencies as a result of her "nervous shock, extreme emotional turmoil and mental distress and anguish," id. Count 7 ¶¶ 49-50.  Accordingly, defendant Amtrak's motion to dismiss Count 7 will be denied.

**IV.   Conclusion**

For the foregoing reasons, the motion of the Town defendants [Doc. # 39/45] is GRANTED and all claims against the Town defendants are dismissed.  Defendant Amtrak's motion [Doc. # 41] is GRANTED as to plaintiff Metzermacher's bystander emotional distress claim (Count 6) and DENIED as to plaintiff Rainville's bystander emotional distress claim (Count 7).  The following claims of plaintiffs' Second Amended Complaint thus remain: Count 1 for negligence against Amtrak, Count 2 for public nuisance against Amtrak, Count 5 for loss of consortium against Amtrak, and Count 7 for bystander emotional distress of plaintiff Rainville against Amtrak.

IT IS SO ORDERED.

/s/
Janet Bond Arterton
United States District Judge

**Dated at New Haven, Connecticut this 1st day of February, 2007**